**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN K. SMITH, | : |
| Plaintiff, | : |
| | :     Civil Action No. 15-5302 (MAS) |
| v. | : |
| | :     **OPINION** |
| THE DEPARTMENT OF CORRECTIONS | : |
| OF NEW JERSEY, et al., | : |
| | : |
| Defendants. | : |

**SHIPP, District Judge:**

*Pro se* Plaintiff Brian K. Smith ("Plaintiff") brings this action *in forma pauperis* pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). For the reasons stated below, the Court dismisses all claims against Defendants the Department of Corrections of New Jersey ("DOC"), Mental Health Department ("MHD"),[1] Dr. Defillipo ("Defillipo"), UMDNJ,[2] Sanderson, and the unnamed prison staff and officers; dismisses

---

[1]     The Mental Health Department referred to in the Complaint is the mental health department within the prison at which Plaintiff was incarcerated. (*See* Compl. 1, ECF No. 1.)

[2]     Although Plaintiff does not specify what "UMDNJ" refers to, the Court presumes that Plaintiff is referring to the University of Medicine and Dentistry of New Jersey, which ceased to exist as of July 1, 2013. *See* http://integration.rutgers.edu (last visited Jan. 15, 2016).

all claims regarding the denial of medical services; and allows the prison conditions claims against Defendant Stephen M. Dilio ("Dilio") to proceed.

## I.    FACTUAL BACKGROUND

For the purposes of this Opinion, the Court accepts all facts alleged in the Complaint as true, and in the light most favorable to Plaintiff. The Complaint primarily consists of a detailed list of the allegedly deplorable living conditions of Plaintiff's confinement at the New Jersey State Prison, (*see* Ex. to Compl. 11-15, ECF No. 1-1), which appears to describe Plaintiff's living conditions while in administrative segregation, and not while in the general population, (*see id.* at 16). These deplorable conditions include: (1) lack of drinking water, (2) the presence of mice, black spiders, and other insects in his cell, which often bit Plaintiff, (3) no sink or running water in his cell, nor a working toilet, (4) lack of proper ventilation, (5) lack of food at times, (6) being forced to kneel for eight hours a day, (7) lack of access to recreational yard, (8) lack of haircuts, and (9) no lighting inside his cell. (*Id.* at 11-15.) Plaintiff also provides a detailed list of medical conditions that he has suffered, some caused by his deplorable living conditions, and for which Plaintiff claims he received inadequate medical treatment. (*See id.* at 20; Compl. 4, ECF No. 1.)

However, with the exception of Defendant Dilio, as explained below, the Complaint is mostly devoid of any factual allegations regarding how the other named defendants are involved in this case—the Complaint does not allege that Plaintiff reported any of the deplorable conditions and/or denial of medical services to any such defendants; that any such defendants responded to Plaintiff's complaints; that any such defendants attempted to or did provide some sort of remedy to Plaintiff's complaints, and what those remedies were, if any; or that any such defendants even had knowledge of Plaintiff's living and medical conditions. To be clear, the Complaint does appear to describe the alleged actions of some other unnamed prison staff and officials, but as far

2

as the Court can deduce, none of those actors are named defendants in the instant matter. (*See,* *e.g.,* Ex. to Compl. 8, 12-15.) The Complaint simply states, "[a]ll name[d defendants] did Plaintiff wrong by [violating] civil rights, human rights, and disrespected the Plaintiff." (Compl. 3.)

The Complaint does contain a few specific allegations against the "Administrator." (*See* Ex. to Compl. 12, 13 & 15.) The Court construes these references to the "Administrator" as references to Dilio, since Plaintiff identifies Dilio as the "prison administrator." (Compl. 2.) Specifically, the Complaint alleges that the "Administrator said to me . . . since I want to act like a monkey, he will treat me like a monkey . . . until I cool out[,]" (Ex. to Compl. 12); that "Plaintiff was assaulted by other inmates . . . and Admin. did nothing[,]" (*id.* at 13); and that "Plaintiff was 'bull[ied]' by . . . Admin.[,]" (*id.* at 15). Significantly, the Complaint does not contain allegations about how Dilio was involved in the denial of medical services to Plaintiff.

The Complaint demands damages in the amount of $22.4 million dollars, of which one million dollars are to be donated to the "Make a Wish Foundation for Kids," and one million dollars to the "Susan Cancer Research Foundation." (Compl. 4.)

## II.      STANDARD OF REVIEW

Per the Prison Litigation Reform Act, Pub. L. No. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), or a prisoner seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* This action is subject to *sua sponte* screening for dismissal under

3

these statutes because Plaintiff is proceeding *in forma pauperis*, he is a prisoner, and he seeks redress from a governmental entity.

"[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.    DISCUSSION

A plaintiff can pursue a cause of action under § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Am.*

4

*Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-1 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166-7 (3d Cir. 2013).

### A. Non-Person Defendants

In order to state a cognizable § 1983 claim, "a plaintiff must allege *a person* acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow*, 719 F.3d at 166-67 (citation omitted) (emphasis added). Here, Defendants DOC and MHD are not "persons" for the purposes of § 1983. *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (finding that the Department of Corrections, as a state agency, is not a "person" that can be sued under § 1983) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845 (3d Cir. 2011) (finding that a prison's medical department is not a "person" under § 1983). As such, claims against Defendants DOC and MHD must be dismissed.

### B. Failure to State a Claim

As summarized in the factual background, although the Complaint describes in detail the deplorable conditions Plaintiff was allegedly subjected to while in prison, and lists the medical conditions that Plaintiff allegedly was not adequately treated for, none of the factual allegations are, with a few exceptions, directed at any of the named Defendants. Specifically, while Defendants Defillipo, UMDNJ, and Sanderson are listed as defendants, they are not mentioned anywhere else among the many detailed factual allegations in the Complaint.

A claim is facially plausible against a defendant only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont*, 708 F.3d 470 at 483 (quoting *Iqbal*, 556 U.S. at 678). Here, while Plaintiff provides in great detail a myriad of adverse conditions he suffered as a result of the alleged

constitutional violations, Plaintiff does not specify which defendants participated in, and/or were responsible for, each of the alleged violations. Nor does Plaintiff provide any other details regarding the time/place/manner of these violations. Therefore, the Court is unable to infer that each of these defendants was personally responsible for some, all, or for that matter *any*, of the alleged violations.[3]

For example, the Court can infer that Defillipo, a doctor, may have allegedly been involved in at least some of the denial of medical services claims. However, there are no factual allegations to describe what specific medical conditions Defillipo treated Plaintiff for, what treatments were or were not prescribed, whether Plaintiff specifically complained to Defillipo about his list of conditions, or whether Defillipo had any knowledge of Plaintiff's medical conditions. In fact, the Complaint is devoid of any factual allegation that Plaintiff had ever interacted with or spoken to Defillipo at all—he is simply listed as a defendant who is generally responsible for the alleged violations. Without precisely identifying which defendants were involved in which alleged constitutional violation, and without explaining how they were involved in the violation, no reasonable inference can be drawn that any defendant would be liable for any alleged misconduct.

Likewise, with regard to any claims made against the unnamed prison staff and officers, as the Court noted above, there are specific factual allegations regarding what the unnamed officials had done. However, as with Plaintiff's other factual allegations, they are too general for the Court to determine whether any specific person may have violated Plaintiff's constitutional rights—the Complaint does not state whether the alleged acts were all done by one particular person, whether they were done by different people, or whether they were done by multiple individuals in concert.

---

[3]   The Complaint also alleges that other inmates "assaulted" Plaintiff by throwing human waste at him and his cell. (Ex. to Compl. 13.) However, these inmates are not named as defendants in the Complaint, nor is there any allegation that they are state actors as required for § 1983 claims.

The Complaint also does not contain specific factual allegations that would sufficiently allow the Court and Defendants to identify the individual(s) responsible. While at this stage Plaintiff need not conclusively assert the identities of the unnamed defendants, the Complaint still must identify specific acts of specific defendants which would put individual defendants on notice of their alleged wrongdoing. "Although courts sometimes allow plaintiffs to plead causes of action against a 'John Doe' defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense." *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014); *see Torrey v. New Jersey*, No. 13-1192, 2014 WL 941308, at * 18 (D.N.J. Mar. 11, 2014); *Shirey v. Bensalem Twp.*, 501 F. Supp. 1138, 1143 (E.D. Pa. 1980).

The Court sympathizes with Plaintiff's alleged sufferings. But in order to seek redress against any particular defendant in this Court, Plaintiff must clearly identify the violations each defendant was allegedly responsible for, how they were responsible, and what harm resulted from each violation. The law requires more. *See Badia v. Warden, HCCC*, No. 10-5662, 2011 WL 221709, at *3 (D.N.J. Jan. 19, 2011) (finding that a § 1983 complaint should specify "the who, what, when, where, and how: the first paragraph of any newspaper story"). Accordingly, Defendants Defillipo, UMDNJ, Sanderson, and the unnamed prison staff and officers are dismissed for Plaintiff's failure to state a claim upon which relief can be granted against them.[4]

---

[4]     Under the Federal Rules of Civil Procedure, Plaintiff can still amend his pleading once as a matter of course. *See* Fed. R. Civ. P. 15(a). Thus, Plaintiff may, if he so chooses, submit an amended pleading to cure the defects in the Complaint as identified by this Opinion, within the time prescribed by Rule 15(a). He may not reassert claims against Defendants DOC and MHD.

### C. Defendant Dilio

With regard to the claims for denial of medical services against Defendant Dilio, the Court finds those claims similarly defective for the reasons stated above. Indeed, Plaintiff has alleged that Dilio was a prison administrator, not a medical professional; if the Court cannot infer from the Complaint a denial of medical services claim against Defillipo, surely no such claim can be inferred against Dilio. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (finding that a non-medical prison supervisor cannot be held liable for a denial of medical services claim, even if he has personal knowledge of the denial, as long as the plaintiff was under the continuous care of medical personnel tasked with providing medical care to inmates; the supervisory official can presume that the plaintiff was in capable hands).

However, with regard to the prison conditions claims, the Court finds that Plaintiff has pled sufficient allegations against Dilio to state a cognizable claim, due to the specific factual allegations made in the Complaint regarding Dilio.

## IV.   CONCLUSION

For the reasons set forth above, all claims against Defendants DOC and MHD are **DISMISSED WITH PREJUDICE**. All claims against Defendants Defillipo, UMDNJ, Sanderson, and the unnamed prison staff and officers are **DISMISSED WITHOUT PREJUDICE**, and all claims for the denial of medical services are **DISMISSED WITHOUT PREJUDICE**. However, the prison conditions claims against Defendant Dilio are allowed to proceed.

_____
**Michael A. Shipp, U.S.D.J.**

Dated:  1/27/16

8