<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| BRIAN K. SMITH, | : | Civil Action No. 15-5302 (MAS) (TJB) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| STEPHEN D'ILIO, | : |  |
|  | : |  |
| Defendant. | : |  |

<u>**SHIPP, District Judge**</u>

Plaintiff Brian Smith filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1.)  Presently before the Court is a motion for summary judgment filed by Plaintiff, as well as a motion for summary judgment filed by Defendant Stephen D'Ilio. (Pl.'s Mot., ECF No. 111; Def.'s Mot., ECF No. 123.)  Pursuant to Federal Rule of Civil Procedure 78(b), the Court will decide the motions for summary judgment on the briefs and without oral argument.  For the reasons stated below, the Court denies both Plaintiff's motion and Defendant's motion.

I.   <u>**PROCEDURAL HISTORY**</u>

On or about July 6, 2015, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1.) The Complaint alleged numerous conditions of confinement claims as well as denial of medical care claims from the time Plaintiff was incarcerated at New Jersey State Prison. (*Id.* at 3.) The Complaint alleged that as a result of these conditions, Plaintiff sustained physical and mental injuries, including loss of vision in his left eye, headaches, joint pain in his knees, leg pain, and "long term mental health problems." (*Id.* at 4.) The Complaint named

as defendants the New Jersey Department of Corrections, Mental Health Department, Dr. DeFillipo, U.M.D.N.J., Stephen D'Ilio, Sanderson, and Prison Staff/Prison Officers. (*Id.* at 2.) The Court screened the Complaint, dismissed with prejudice all claims against the Department of Corrections and Mental Health Services, and dismissed without prejudice Plaintiff's claims for denial of medical services and all claims against DeFillipo, UMDNJ, Sanderson, and the unnamed prison officers. (Op., Jan. 27, 2016, ECF No. 6.)   The Court permitted the conditions of confinement claims against D'Ilio to proceed. (*Id.*)

Following discovery, Plaintiff filed the instant motion for summary judgment on his conditions of confinement claims against the only remaining Defendant, Stephen D'Ilio. (Mot., ECF No. 111.)  Defendant opposed Plaintiff's motion and filed a cross-motion for summary judgment. (Def.'s Mot., ECF No. 123.)  Plaintiff thereafter filed a reply. (Reply, ECF No. 133.)

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Statement of Undisputed Facts

Plaintiff did not submit with his motion a Statement of Undisputed Facts, as required by Local Civil Rule 56.1(a).  Taking into consideration Plaintiff's *pro se* status, however, the Court will construe the numbered "Facts" in Plaintiff's moving papers as his Statement of Undisputed Facts. (Mot., ECF No. 111 at 1–3.)  Plaintiff's facts delineate the "deplorable" conditions he was forced to endure, which include: (1) lack of drinking water, (2) presence of mice, spiders, and other insects, (3) lack of a sink and running water in his cell, (4) lack of proper ventilation, (5) lack of access to a recreation yard, (6) lack of haircuts, and (7) inadequate lighting inside his cell. (*Id.*) Plaintiff asserts that his claims have been proven through the photographs he attached to his original complaint and the instant motion. (*Id.* at 2.)

### B.     Defendant's Statement of Undisputed Facts

Defendant's Statement of Undisputed Facts provides the following account of events. On May 10, 2013, Plaintiff was transferred from Northern State Prison ("NSP") to New Jersey State Prison ("NJSP"). (Dronson Decl. Ex. A, ECF No. 123-6 at 30.) Plaintiff was immediately assigned to the administrative segregation housing unit as the result of an assault he committed while at NSP. (*Id.* at 18.) Within forty-eight (48) hours of his arrival at NJSP, Plaintiff intentionally flooded his cell. (Dronson Decl. Ex. B 27:3–27:7, ECF No. 123-7.) Plaintiff testified that he did this as retaliation because prison guards refused to provide him with new clothes or the opportunity to shower after another inmate threw human waste at him. (*Id.* at 26:2–26:20.)

As a result of flooding his cell, Plaintiff was transferred to a "dry cell." (*Id.* at 16:17–16:20.) A dry cell does not have running water. (*Id.* at 18:19–18:23.) It contains a "concrete platform with a hole for bodily waste elimination." (Dronson Decl. Ex. C ¶ 4, ECF No. 123-8.) An officer must utilize a door mechanism from the outside to flush the toilet. (*Id.* at ¶ 4; Dronson Decl. Ex. B 18:13–18:16, ECF No. 123-7.) Dry cells have open bars to allow ventilation but do not contain inside lights in order to prevent "problematic inmates [from] breaking lights and risking electrocution." (Dronson Decl. Ex. C ¶ 4, ECF No. 123-8.) Generally, inmates were placed into dry cells if they either ingested contraband or flooded their cells. (*Id.* at ¶ 3.) Placement of an inmate into a dry cell does not always require an administrator's approval. (*Id.*)

While Plaintiff was confined in dry cells, he continued to find ways to flood his toilet. (Dronson Decl. Ex. B 23:3–24:11, ECF No. 123-7.) By way of example, Plaintiff testified that he would roll up a bible and use it to clog the toilet. (*Id.* at 23:6–7.) When an officer subsequently flushed the toilet, it would cause the cell to flood. (*Id.* at 23:15–23:19.) Throughout his stay at NJSP, Plaintiff was also found guilty of committing numerous other prohibited acts, including

3

"destroying, altering or damaging government property," "threatening another with bodily harm," and "possession of a weapon." (Dronson Decl. Ex. A, ECF No. 123-6 at 18–26; Dronson Decl. Exs. D-L, ECF Nos. 123-9 through 123-17.) In total, Plaintiff was found to have committed almost two dozen disciplinary infractions from the time he arrived at NJSP in May 2013 until he left in October 2015. (Dronson Decl. Ex. A, ECF No. 123-6 at 18–26.) As a result of this behavior, Plaintiff was often placed into dry cells. (Dronson Decl. Ex. B 154:25–157:25, ECF No. 123-7; Dronson Decl. Ex. C ¶ 12.) Specifically, Plaintiff's "Progress Notes" from the prison indicate that he was confined in a dry cell from July 9, 2013 through August 4, 2013; September 11, 2013 through September 12, 2013; September 17, 2013 through October 1, 2013; November 9, 2013 through February 14, 2014; February 18, 2014 through March 3, 2014; and March 25, 2014 through April 4, 2014. (Dronson Decl. Ex. A, ECF No. 123-6 at 30–32.)

Plaintiff submitted a voluminous number of grievances regarding the ongoing conditions of his confinement in the dry cells. (Dronson Decl. Ex. N, ECF Nos. 19-30.) These repeated grievances indicated that Plaintiff was not being provided with food or water, there were mice in his cell, there were problems with ventilation, and he was being denied recreation time. (*See generally id.*) In addition to these grievances, Plaintiff also alleged that he personally spoke with Defendant twice. (Dronson Decl. Ex. B 204:3–7, ECF No. 123-7.) On one of these occasions, Defendant visited Plaintiff while Plaintiff was confined in a dry cell. (*Id.* at 205:20–21.) Plaintiff asked Defendant, "Can you do something about me getting out of this dry cell?" (*Id.* at 206:1–2.) Defendant allegedly replied, "Well, the officers already informed me, you want to act like a monkey, you get treated like a monkey." (*Id.* at 207:13–15.)

Plaintiff's medical records indicate that he was seen numerous times by medical providers while he was confined in dry cells. (Dronson Decl. Ex. M, ECF No. 124 at 459–1256.) Many of

4

these visits indicate that Plaintiff was "well nourished" and "well hydrated." (*Id.* at 1035, 1048, 1084, 1147, 1199, 1206.) Two of Plaintiff's medical visits, however, do indicate that he complained of dehydration. (*Id.* at 746, 1007.)

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to award a party summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if supported by evidence such that a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52 (1986); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Kaucher*, 455 F.3d at 423. In determining whether a genuine dispute of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-movant]." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party then carries the burden to "designate specific facts showing that there is a genuine [dispute] for trial." *Id.* at 324 (internal quotation marks omitted). Moreover, the non-moving party "may not rest upon the mere allegations or denials of [the] pleading." *Id.* at 322 n.3 (quoting Fed. R. Civ. P. 56(e)). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

5

## IV.   DISCUSSION

### A. Defendant's Personal Involvement

In Defendant's motion for summary judgment, he argues that Plaintiff has failed to adduce evidence establishing Defendant had any personal involvement in the alleged unconstitutional conditions of confinement and, as a result, Plaintiff's claims are based upon an impermissible theory of supervisory liability. (Def.'s Br. in Supp., ECF No. 123-2 at 28.) Specifically, Defendant states that "there is no indication" that he was responsible for, or even aware of, Plaintiff's allegedly unconstitutional conditions. (*Id.* at 27.) Plaintiff argues, however, that Defendant was indeed aware of the conditions of his confinement, based upon the numerous grievances Plaintiff filed and the fact that Defendant visited Plaintiff while he was confined in a dry cell. (Reply, ECF No. 133 at 29, 32–33.)

Generally, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Rather, a plaintiff must establish that each defendant had "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). The requisite personal involvement may be shown either where the supervisor defendant "established and maintained a policy, practice or custom which directly caused the constitutional harm," or "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.").

Generally, a supervisory defendant's mere participation in the grievance process, without more, is insufficient to state a claim. *See Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015). There is case law, however, suggesting that repeated written complaints to a supervisory defendant of an *ongoing* constitutional violation may be sufficient to establish deliberate indifference by circumstantial evidence. *See Garcia v. Corr. Med. Serv., Inc.*, Civ. No. 13-1250, 2016 WL 7377103, at *5 (D.N.J. Dec. 20, 2016) ("Plaintiff has alleged that Defendants ignored his complaints and requests for treatment for nine years. It is therefore not unreasonable to infer [Defendants] knew of the need for medical care during that time and intentionally refused to provide it."); *Cardona v. Warden – MDC Facility*, Civ. No. 12-7161, 2013 WL 6446999, at *5 (D.N.J. Dec. 6, 2013) (holding that plaintiff stated a valid denial of medical services claim against the prison warden because plaintiff alleged an ongoing constitutional violation, and alleged that the warden was made aware of the ongoing violation through repeated written requests); *see also Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) ("[Plaintiff] did his part to let the officers know he was suffering. . . . [A]n inmate's letters to officials setting out his medical condition put the officials on notice of his potential problem, and that the question as to whether the officers drew the inference that certain things should be done for the inmate could be determined by a jury on the basis of circumstantial evidence." (citing *Reed v. McBride*, 178 F.3d 849 (7th Cir. 1999))). "A prisoner's grievance or complaint regarding ongoing abuse may be sufficient to put a prison official on notice of such abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims." *Binsack v. Lackawanna Cty. Prison*, Civ. No. 10-535, 2010 WL 4973309, at *3 (M.D. Pa. Oct. 14, 2010) (citing *Atkinson v. Taylor*, 316 F.3d 257, 270–71 (3d Cir. 2003)).

Here, there remains a genuine dispute of material fact as to whether Defendant had personal involvement in the underlying constitutional violations.  Plaintiff testified that he submitted a voluminous number of grievances about his ongoing conditions of confinement.  (Dronson Decl. Ex. B 207:16–19; 240:3–10, ECF No. 123-7.)  Although none of the grievance forms that have been submitted in this case demonstrate that Defendant responded, Plaintiff testified that "Mr. Stephen D'Ilio would respond to some remedy forms." (*Id.* at 194:15–17.)  Further, Plaintiff also testified that Defendant personally visited him while he was confined in a dry cell.  (*Id.* at 205:10–15.)  When Plaintiff asked Defendant if he could get out of the dry cell, Defendant allegedly responded, "Well, the officers already informed me, you want to act like a money, you get treated like a monkey." (*Id.* at 206:1–15, ECF No. 123-7.)  In the answers to his interrogatories, Defendant stated that he did not recall any specific information regarding Plaintiff.  (Dronson Decl. Ex. C ¶ 2, ECF No. 123-8.)

Given the evidence provided, a reasonable jury could conclude that Defendant was aware of Plaintiff's unconstitutional conditions of confinement through direct knowledge and/or circumstantial evidence.  Accordingly, Defendant is not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).  Summary judgment for Defendant is denied on this ground.

### B. Eighth Amendment Deliberate Indifference

In Defendant's motion for summary judgment, he also argues that Plaintiff's conditions of confinement claims must fail because Plaintiff has failed to demonstrate that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment.  (Def.'s Br. in Supp., ECF No. 123-2 at 11.)  Plaintiff, in his own motion for summary judgment, asserts simply that he has "proven" his unconstitutional conditions of confinement claims.  (Pl.'s Mot., ECF No. 111 at 2.)

Under the Eighth Amendment, a prisoner may not be subjected to cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). Prison officials are required to provide "humane conditions of confinement." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The cruel and unusual punishment standard is not static but is measured by "the evolving standards of decency that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1956)). To assert an Eighth Amendment conditions of confinement claim, a plaintiff must show: "(1) the deprivation alleged was objectively, 'sufficiently serious' such that the prison officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison official exhibited 'deliberate indifference' to his health and safety." *See Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (quoting *Farmer*, 511 U.S. at 834). The deliberate indifference standard requires that the official "must actually be aware" of the risk to the prisoner's health and safety and disregard that risk. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Beers-Capitol*, 256 F.3d at 133. Further, "[i]n actions challenging a large number of prison conditions, a district court . . . must inquire whether the challenged conditions alone or in combination violate eighth amendment standards, recognizing that the totality of the conditions may deprive inmates of the minimal civilized measure of life's necessities." *Peterkin v. Jeffes*, 855 F.2d 1021, 1024 (3d Cir. 1988) (internal quotation marks and citations omitted); *see also Rhodes*, 452 U.S. at 347.

Here, there remains a genuine dispute of material fact as to whether Defendant violated Plaintiff's Eighth Amendment rights. With regard to the deprivations Plaintiff suffered, Plaintiff was often confined in a dry cell for prolonged periods, including weeks and even months at a time.

(Dronson Decl. Ex. A, ECF No. 123-6 at 30–32.) While in the dry cells, Plaintiff testified, among other things, that he was often not provided with drinking water or food, that mice were constantly in his cell, that there was a lack of adequate ventilation and light, and that he was "never" permitted outside for recreation. (Dronson Decl. Ex. B 36:14–18; 228:2–7; 35:8–13; 23:1–2; 36:2–7; 48:1–5, ECF No. 123-7.) Defendant refutes these contentions, however, stating that Plaintiff was regularly examined by medical providers while incarcerated and that his medical records indicated he was well hydrated and well nourished. (Def.'s Br. in Supp., ECF No. 123-2 at 18.) Defendant also states that any claims of rodent infestation would have been referred to an exterminator and that Plaintiff's medical records do not indicate that he ever suffered from insect or rodent bites. (*Id.* at 21-22.) Defendant contends the dry cells were "open-barred" to permit ventilation and that the lack of lighting was a design measure undertaken to prevent problematic inmates from breaking lights and risking electrocution. (*Id.* at 19-20.) And, as for Plaintiff's allegations regarding a lack of recreation time, Defendant states that this was the result of disciplinary sanctions Plaintiff received for his own destructive behavior. (*Id.* at 21.)

With respect to whether Defendant was deliberately indifferent to Plaintiff's allegedly unconstitutional conditions of confinement, Defendant argues there is no evidence that he was ever made aware of Plaintiff's conditions. (*Id.* at 22.) Yet, Plaintiff submitted a voluminous number of grievances throughout 2013 and 2014 in which he continuously complained about the ongoing violations he was allegedly suffering. (Dronson Decl. Ex. N, ECF Nos. 19-30.) Plaintiff also testified that Defendant personally visited him while he was confined in a dry cell, thereby indicating that Defendant may have been aware of at least some of the conditions of his confinement. (Dronson Decl. Ex. B 205:10–15, ECF No. 123-7.)

Based upon this conflicting evidence, there exists a genuine dispute of material fact as to whether Plaintiff's conditions of confinement deprived him of the minimal civilized measure of life's necessities and as to whether Defendant was deliberately indifferent towards these alleged violations. Accordingly, neither Plaintiff nor Defendant has demonstrated that they are entitled to judgment as a matter of law. Summary judgment is denied as to both Plaintiff and Defendant on this ground.

## V.   CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary judgment and DENIES Defendant's motion for summary judgment. An appropriate Order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 4/29/20